ZOILO and MANUEL MÉNDEZ RÍOS, Plaintiffs and Appellees, *v.* EASTERN SUGAR ASSOCIATES, later FAJARDO EASTERN SUGAR ASSOCIATES, at present C. BREWER PUERTO RICO, INC., Defendant and Appellant.

No. R-62-255.    Decided February 16, 1965.

*Fiddler, González & Rodríguez* and *Víctor M. Pons, Jr.,* for appellant. *Antonio Figueroa Rivera* for appellees.

Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Rigau, and Mr. Justice Dávila.

MR. JUSTICE DÁVILA delivered the opinion of the Court.

In 1923 plaintiffs' father exchanged some lands with The Juncos Central Company, a sugar-processing concern. By the fourth clause of the conditions agreed upon for the exchange they stipulated the following:

"It is expressly agreed that the corporation THE JUNCOS CENTRAL COMPANY binds itself to respect and perform the lease contract which the appearing party, Manuel Méndez Dueño,

has entered into with Sucreries de Saint Jean, a stock company, to which reference has been made in the third paragraph of this deed, binding itself further to grind in its factory all the cane which may be produced on lands belonging at present to Méndez, his heirs, or successors, *on the basis of the most liberal contract which the said corporation may make,* and in exchange for this right Manuel Méndez Dueño, for himself and as attorney in fact for his wife, WAIVES formally and expressly his right to lay his own railway tracks across the tracks of The Juncos Central Company, in pursuance of the stipulation contained in the fifth clause[1] of deed number one hundred thirty-three of May twenty-two nineteen hundred and seventeen, executed before Notary Francisco González Fagundo." (Italics ours.)

After a series of events and incidents which we need not recite at this time, the lands and mill belonging to The Juncos Central Company passed into the hands of Eastern Sugar Associates, later to Fajardo Eastern Sugar, and finally to C. Brewer & Co., defendant herein.

In 1952 plaintiffs, through their attorney, wrote a letter to Eastern Sugar Associates making reference to the "fourth clause" copied above, and informing that "for several years . . . [plaintiffs] have been grinding with Eastern Sugar Associates the cane produced on lands which at the time of that deed belonged to Manuel Méndez Dueño, at present to my said clients as heirs and successors." He also informed Eastern that "we have learned that Eastern Sugar Associates has liquidated contracts to different colonos at a percentage much higher than the liquidation made to Messrs. Méndez Ríos." And he ended by requesting that "they be compensated and paid [for the cane ground] the balance of

---

[1] In 1917 plaintiffs' father, Manuel Méndez, by deed No. 133 of May 22, 1917, ceded a servitude of railway over his lands as servient tenement, and upon establishing the same he reserved by the fifth clause "the right granted to him by The Juncos Central Company to cross by other railways the railways of The Juncos Central Company object of this servitude."

the difference between the liquidation made to them and the more liberal liquidations made to other colonos."

The sugar company refused liability under the clause invoked by the Méndez Ríos brothers.

Thereupon the Méndez brothers filed a petition for declaratory judgment. After reciting the antecedents to which we have referred, they prayed, among other things, "this Honorable Court to settle the controversy existing between the parties in this case, and to render declaratory judgment decreeing that, since plaintiffs are bound by the existing waiver made by their predecessors to cross the railway lines in question,[2] defendant is bound to perform the agreement which was and has been a condition, object, or consideration for such waiver, namely, to grind all the cane produced on the lands of plaintiffs (heirs and successors of Manuel Méndez Dueño and his wife Micaela Ríos) on the basis of the most liberal contract; consequently, to decree that, since defendant failed to make the liquidation to any of the plaintiffs in any of the years in which they have ground their cane with it, but rather lower liquidations and contracts, the latter should pay them the difference between the contracts and the liquidation which it has made and the contracts and liquidations which it should have made to them; that as to the years in which plaintiffs did not grind their cane with defendant, the latter having nonetheless used this servitude for its benefit, that the Court determine that defendant is bound to pay them for such use, fixing to that effect a rate, as per contracts made and/or assumed by defendant, of 15 cents per ton of cane transported over the tracks laid out on those servitudes;

---

[2] There is some confusion on the part of plaintiffs and of the trial court as to the obligation assumed by Manuel Méndez Dueño. Some times they refer to the stipulation actually made, "waives the right to cross certain railways by other railways," but othertimes they treat the matter as if the obligation assumed by the Juncos Central were in payment of a servitude. The servitude had been established prior to the agreement made in 1923.

[and] to award to each plaintiff, for the claims herein involved, not less than $175,000 or its equivalent in sugar."

The trial court held that plaintiffs had no right to receive compensation for those years in which they did not grind their cane in defendant's mill.[3] It also held that "The purpose of the contracting parties [in stipulating that the cane would be liquidated to Dueño and his heirs and successors on the basis of the most liberal contract which the said corporation may make] was that, in exchange for the exclusive use of the servitude procured [sic] by Messrs. Méndez to the sugar enterprise, the latter would pay for their cane in the same manner as the liquidation made to the colono for the cane of greater yield." In other words, "that the most liberal contract must be that of the colono whose cane has produced the greatest yield in the grinding season of each year."

We cannot agree with that ruling. It is not the correct interpretation of the clause "on the basis of the most liberal contract which the said corporation may make."

■ At the time plaintiffs' predecessor and Central Juncos stipulated the clause whose interpretation is the object of litigation, it was the practice in Puerto Rico to liquidate the cane to the colonos at a fixed rate of yield. So many pounds of sugar per 100 pounds of sugarcane, regardless of the actual yield in sugar of the cane. Thus, it was agreed to liquidate to the colono 5, 6 or more pounds of sugar for each 100 pounds of cane. The liquidations were not uniform, and the colonos were treated in accordance with their economic solvency. The colono who was in a better position to deal with the central was accorded better treatment. See *Vidal* v. *Fernández*, 104 F.2d 606, 609 (1st Cir. 1939). This explains why it was agreed with Dueño to liquidate his cane "on the basis of the most liberal contract which the said corporation may make,"

---

[3] Plaintiffs did not appeal from this determination.

pursuant to the practice of according preferential and more liberal treatment to some colonos.

In *Polanco* v. *Societé Anonyme*, 33 P.R.R. 227 (1924), we find an example of the foregoing. Polanco agreed with the central to liquidate his cane on the basis of six pounds of sugar for each 100 pounds of cane. He stipulated, however, that the central "during the existence of this contract agrees to pay to Polanco at the same rate as is paid to any other of the mill's planters." One of the conditions was that he would cultivate a specific number of cuerdas of cane. Polanco brought action alleging that the central had agreed with other colonos to liquidate their cane on the basis of seven pounds of sugar for each 100 pounds of cane, while the same was liquidated to him at six percent. The complaint was dismissed on the ground that in the opinion of the court plaintiff had not complied with the condition imposed, but on appeal we reversed and rendered judgment in his favor.

This method of liquidating the cane—exasperating because of the privilege accorded to some and denied to others —prevailed for many years. It required legislative action in order to correct it. It was not until 1937 that the Legislative Assembly enacted Act No. 112 of May 13, 1937,[4] establishing a uniform formula for liquidating the cane on the basis of its yield. This statute was followed by Act No. 213 of May 15, 1938, Act No. 221 of May 12, 1942, and Act No. 426 of May 13, 1951. See § 5-I of the Act of 1951, 5 L.P.R.A. § 374 (1963 ed.), where there appears the uniform liquidation table. According to the uniform liquidation formula, whenever a colono receives more sugar than another for the same amount of cane, it is due to the difference in sucrose yield between one and the other cane rather than

---

[4] The constitutionality of Act No. 112 was assailed, but it was upheld by the Federal District Court and affirmed on appeal by the Court of Appeals for the First Circuit in *Vidal* v. *Fernández*, 104 F.2d 606 (1st Cir. 1939).

to the fact that the central has accorded him a more liberal treatment. This formula guarantees to the central a reasonable share for the processing of sugar, but it also guarantees to the colono his share in the greater yield of his cane. Under the former formula granting a fixed percentage to the colono, the centrals received a substantial benefit from the greater yield of the cane. As a result, they made concessions and granted privileges to a few colonos at the expense of a great majority which constituted a weak economic group.

■ Thus, we see that the rationale of the clause agreed upon in 1923 by Méndez with the central was based on the practice prevailing in the industry at that time of making concessions to certain colonos in the liquidation of cane for special reasons. The provision in question could in no way refer to the colono who obtained greater yield from his cane, since at the time of making the contract the liquidation to the colonos was not made on the basis of the yield from their cane but, as already said, on the basis of a fixed percentage for each 100 pounds of cane.

Plaintiffs presented in evidence a copy of the contract entered into by defendant and an agricultural concern named Felícita Corporation. It is a contract of establishment of servitude over some properties belonging to Felícita Corporation in favor of some properties belonging to defendant. In the contract, entered into for 10 years but which was in force only during the years 1948 to 1956, it was stipulated that the Central would guarantee to Felícita Corporation a yield of 7.365 pounds of sugar for each 100 pounds of cane. The trial court did not consider this contract as the most liberal executed by defendant on the ground that the guarantee of 7.365 pounds of sugar for each 100 pounds of cane represented payment for the servitude established in favor of defendant's property. Evidently, the trial court's conclusion is correct. The guarantee of a

fixed percentage of yield represented payment of the servitude. It was not a more liberal treatment accorded to the colono. In fact, plaintiffs do not invoke that agreement as representative of the most liberal contract made by defendant. It is interesting to note that the yield from plaintiffs' cane exceeded 7.365 pounds of sugar for 100 pounds of cane in all the years in which the contract with Felícita Corporation was in force, with the exception of two grinding seasons. These are those corresponding to 1952 and 1954 as respects Zoilo Méndez, and 1952 and 1953 as respects Manuel Méndez.[5]

Evidently, we need not discuss the other questions raised by defendant.

Since the contract object of this action must be interpreted in the manner hereinbefore stated, the judgment rendered by the Superior Court, Humacao Part, on September 10, 1962, will be reversed insofar as it ordered defendant to pay to plaintiff Zoilo Méndez Ríos the sum of $136,677.57, and to plaintiff Manuel Méndez Ríos the sum of $147,763.43, as well as the judgment of $20,000 for attorney's fees, and it is held that the liquidations made by defendant conform to the agreement between the parties, and that defendant owes nothing to plaintiffs.

---

[5] Yield from plaintiffs' cane during the time the contract with Felícita Corporation was in force:

| Zoilo Méndez | Manuel Méndez |
|---|---|
| 1948—8.215 | 1948—7.883 |
| 1949—7.681 | 1949—7.669 |
| 1950—7.808 | 1950—7.587 |
| 1951—7.550 | 1951—7.559 |
| 1952—6.830 | 1952—6.6045 |
| 1953—7.470 | 1953—7.3062 |
| 1954—6.577 | |
| 1955—Did not haul. | |
| 1956—Did not haul. | |